COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-015-CV
 
 
 
IN THE INTEREST OF
 
 
M.A.C., JR., A CHILD
 
 
------------
 
FROM THE 323RD DISTRICT 
COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
Introduction
        In 
this appeal from the termination of a presumed biological father’s parental 
rights, we are called upon to determine whether the evidence was factually 
sufficient to support the trial court's finding that termination of the 
parent-child relationship between M.A.C., Jr. and M.A.C., Jr.’s presumed 
biological father (appellant) was in the best interest of M.A.C., Jr.; and 
whether the trial court violated appellant’s constitutional right to a trial 
by jury. We affirm.
Facts
        M.A.C., 
Jr. was born to C.P. and appellant on October 10, 1994. Appellant was fourteen 
when M.A.C., Jr. was born. Appellant was first incarcerated in 1995 when M.A.C., 
Jr. was only a few months old, and has been incarcerated for eight years of 
M.A.C., Jr.’s life. At the time of trial, appellant was incarcerated and 
serving an eight-year sentence for engaging in organized criminal activity. At 
the time of trial, M.A.C., Jr. was nine years old and appellant had last seen 
M.A.C., Jr. when he was around three years old.
        C.P.’s 
parental rights to M.A.C., Jr. were terminated before appellant’s trial. 
Appellant’s rights to another child he had with C.P. were terminated on the 
grounds that appellant engaged in conduct or knowingly placed the child with 
persons who engaged in conduct which endangered the physical or emotional 
well-being of the child. See Tex. 
Fam. Code Ann. § 161.001(1)(E) (Vernon 2002). The trial court in that 
termination action also found that termination of appellant’s rights was in 
that child’s best interest. Appellant did not contest that termination because 
he thought by not contesting it, his chances for keeping his rights to M.A.C., 
Jr. would improve.
        Appellant’s 
termination proceeding was a bench trial. The trial judge ordered that 
appellant’s parental rights to M.A.C., Jr. be terminated and that termination 
was in M.A.C., Jr.’s best interest. Appellant challenges only the best 
interest finding on appeal.
Best Interest
        In 
proceedings to terminate the parent-child relationship brought under section 
161.001 of the family code, the petitioner must establish one or more of the 
acts or omissions enumerated under subdivision (1) of the statute and must also 
prove that termination is in the best interest of the child. Id. § 
161.001; Richardson v. Green, 677 S.W.2d 497, 499 (Tex. 1984); Swate 
v. Swate, 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied). Both 
elements must be established; termination may not be based solely on the best 
interest of the child as determined by the trier of fact. Tex. Dep’t of 
Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).
        Termination 
of parental rights is a drastic remedy and is of such weight and gravity that 
due process requires the petitioner to justify termination by “clear and 
convincing evidence.” TEX. FAM. CODE ANN. §§ 161.001, 161.206(a) (Vernon 2002 & 
Supp. 2004-05); In re G.M., 596 S.W.2d 846, 847 (Tex. 1980). This 
intermediate standard falls between the preponderance standard of ordinary civil 
proceedings and the reasonable doubt standard of criminal proceedings. G.M., 
596 S.W.2d at 847; In re D.T., 34 S.W.3d 625, 630 (Tex. App.—Fort Worth 
2001, pet. denied) (op. on reh’g). It is defined as the “measure or degree 
of proof that will produce in the mind of the trier of fact a firm belief or 
conviction as to the truth of the allegations sought to be established.” Tex. Fam. Code Ann. § 101.007 (Vernon 
2002).
        The 
higher burden of proof in termination cases alters the appellate standard of 
factual sufficiency review. In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). 
“[A] finding that must be based on clear and convincing evidence cannot be 
viewed on appeal the same as one that may be sustained on a mere 
preponderance.” Id. In considering whether the evidence of termination 
rises to the level of being clear and convincing, we must determine “whether 
the evidence is such that a factfinder could reasonably form a firm belief or 
conviction” that the grounds for termination were proven. Id. Our 
inquiry here is limited to whether, on the entire record, a factfinder could 
reasonably form a firm conviction or belief that the termination of the 
parent’s parental rights would be in the best interest of the child. Id. 
at 28.
        Nonexclusive 
factors that the trier of fact in a termination case may use in determining the 
best interest of the child include:
 
(1)the desires of the child;
 
        (2)    the 
emotional and physical needs of the child now and in the future;
 
        (3)    the 
emotional and physical danger to the child now and in the future;
 
        (4)    the 
parental abilities of the individuals seeking custody;
 
        (5)    the 
programs available to assist these individuals to promote the best interest of 
the child;
 
        (6)    the 
plans for the child by these individuals or by the agency seeking custody;
 
        (7)    the 
stability of the home or proposed placement;
 
        (8)    the 
acts or omissions of the parent which may indicate that the existing 
parent-child relationship is not a proper one; and
 
        (9)any 
excuse for the acts or omissions of the parent.
 
Holley v. Adams, 544 
S.W.2d 367, 371-72 (Tex. 1976). These factors are not exhaustive; some listed 
factors may be inapplicable to some cases; other factors not on the list may 
also be considered when appropriate. C.H., 89 S.W.3d at 27. Furthermore, 
undisputed evidence of just one factor may be sufficient in a particular case to 
support a finding that termination is in the best interest of the child. Id. 
On the other hand, the presence of scant evidence relevant to each Holley 
factor will not support such a finding. Id.
        A 
review of the record in this case reveals that there was sufficient evidence to 
support the finding that termination of appellant’s rights was in M.A.C., 
Jr.’s best interest. For example, appellant hardly knew his child, had not 
seen him since he was three, and had been incarcerated for eight of M.A.C., 
Jr.’s nine years. At the time of trial, appellant was still incarcerated and 
serving the remainder of an eight-year sentence. Although appellant suggested 
his mother and his maternal grandparents as possible placement options for 
M.A.C., Jr., appellant’s relatives never visited M.A.C., Jr. in foster care or 
expressed formal desire to take custody of the child.
        Until 
M.A.C., Jr. was placed with the Bradleys, M.A.C., Jr.’s foster family, he had 
spent the majority of his life in neglectful or abusive environments. The 
Department of Family and Protective Services (DFPS) first removed M.A.C., Jr. 
from C.P.’s care due to neglect in 1997 while appellant was in jail. Upon the 
recommendation of C.P., DFPS later placed M.A.C., Jr. in the custody of Louise 
White. M.A.C., Jr. lived with White for approximately four years until DFPS 
removed him in November 2002 because White had severely abused him. Criminal 
charges for the abuse were pending against White at the time of appellant’s 
trial.[2]  Although appellant did not have 
anything to do with M.A.C., Jr.’s placement with White, had it not been for 
appellant’s incarceration, he could have protected M.A.C., Jr. against 
C.P.’s neglect and White’s abuse. See Director of Dallas County 
Child Protective Serv. Unit of Tex. Dept. of Human Serv. v. Bowling, 833 
S.W.2d 730, 733-34 (Tex. App.—Dallas 1992, no writ) (stating that father’s 
confinement, which left the children with the mother who could not care for 
them, endangered child).
        Appellant 
argues that imprisonment alone is not a sufficient basis for termination, but 
this argument ignores that appellant voluntarily engaged in criminal conduct on 
at least four occasions.[3]  See Tex. Dept. of 
Human Serv. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987) (holding imprisonment 
is a factor to be considered by the trial court on the issue of endangerment); see 
also Bowling, 833 S.W.2d at 733-34. Moreover, appellant conceded that his 
continuous arrests and incarcerations have prevented him from caring for M.A.C., 
Jr. and have left M.A.C., Jr. in potentially dangerous situations. Although 
appellant has made some plans for the future in that he completed anger 
management, vocation, and parenting classes, and received his GED while 
incarcerated, he admitted he does not know when he will be released from prison 
and free to care for M.A.C., Jr.
        M.A.C., 
Jr.’s current foster family has plans to adopt M.A.C., Jr. if appellant’s 
rights are terminated. M.A.C., Jr.’s DFPS caseworker testified that M.A.C., 
Jr. had bonded with his foster family, was doing well with them, seemed happy, 
was going to school, participated in extracurricular activities, and wanted his 
last name to be changed to Bradley, the foster family’s name. When M.A.C., 
Jr.’s caseworker asked him about his father he said he “kind of 
remembered” appellant, but when pressed for details, M.A.C., Jr. could not 
provide any. M.A.C., Jr.’s caseworker opined that it was in M.A.C., Jr.’s 
best interest to terminate appellant’s parental rights so that M.A.C., Jr. 
could be adopted by the Bradleys.
        After 
a review of the entire record, we hold that the evidence is factually sufficient 
to support the trial court’s finding that termination of appellant’s rights 
were in the best interest of M.A.C., Jr. Appellant’s first point is overruled.
Jury Trial
        In 
his second point, appellant argues that he was deprived of his constitutional 
due process right to a trial by jury because his termination trial was held 
before the judge instead of a jury. He contends that in proceedings for 
termination of parental rights, the court should require an express waiver of 
trial by jury, as in criminal cases.
        The 
family code provides that a party has a right to demand a jury trial in certain 
proceedings, including those for involuntary termination of parental rights. Tex. Fam. Code Ann. § 105.002 (Vernon 
Supp. 2004-05). Rule 216(a) of the rules of civil procedure governs this right. Tex. R. Civ. P. 216(a); see Gen. 
Motors Corp. v. Gayle, 924 S.W.2d 222, 226 (Tex. App.—Houston [14th Dist.] 
1996, orig. proceeding) (stating that the right to a jury trial is not 
automatic, but, rather, arises only where a party complies with the rules”). 
Rule 216(a) provides:
 
No jury trial shall be had in 
any civil suit, unless a written request for a jury trial is filed with the 
clerk of the court a reasonable time before the date set for trial of the cause 
on the non-jury docket, but not less than thirty days in advance.
 
Tex. R. Civ. P. 216(a).
        The 
requirement of an express waiver of jury trial in criminal cases lies in the 
Texas Code of Criminal Procedure, not the United States Constitution. In re 
K.C., 23 S.W.3d 604, 608-09 (Tex. App.—Beaumont 2000, no pet.); see 
Tex. Code Crim. Proc. Ann. art. 
1.13 (Vernon Supp.2004). In contrast, a jury trial is provided only upon a 
timely request in family courts. See Tex. Fam.Code Ann. § 105.002; In re 
T.H., 131 S.W.3d 598, 601-02 (Tex. App.—Texarkana 2004, pet. filed) 
(holding father not entitled to a jury trial, in action to terminate his 
parental rights, where father did not request a jury trial until after the 
non-jury trial had commenced). Because the family code does not require an 
express waiver of trial by jury and because appellant did not request a jury or 
object to the bench trial, we overrule appellant’s second point.
Conclusion
        Having 
overruled both of appellant’s points we affirm the trial court’s judgment.
   
  
                                                                  TERRIE 
LIVINGSTON
                                                                  JUSTICE
  
 
PANEL F:   LIVINGSTON, 
GARDNER, and WALKER, JJ.
DELIVERED: August 24, 2004

 
NOTES
1.  See 
Tex. R. App. P. 47.4.
2.  
School personnel reported White for abuse. M.A.C., Jr. was hospitalized for 
injuries he sustained after White beat him with a buckled belt, fractured his 
foot, gave him a black eye, caused severe bruising on his face, legs, and 
buttocks, and oozing sores on his buttocks.
3.  
Appellant had an extensive criminal history starting when he was a juvenile. 
Appellant was arrested in 1995 for an assault, convicted and sentenced to the 
custody of the Texas Youth Commission (TYC) for nineteen months. Appellant was 
out of custody for one month when he was arrested and convicted again for 
assault and served nine months in TYC. In March of 1998, appellant was convicted 
of burglary of a vehicle and sentenced to forty-five days’ confinement in the 
Tarrant County Jail. Appellant was out of jail approximately three months when 
he was convicted for engaging in organized criminal activity and sentenced to 
eight years’ confinement starting in July 1998.