

NUMBER 13-13-00146-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

### IN THE INTEREST OF H.E., A CHILD

---

### On appeal from the 24th District Court
### of Victoria County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza and Perkes
### Memorandum Opinion by Justice Garza

In this accelerated appeal, appellant L.E. challenges the termination of her parental rights to her biological daughter, H.E., a child.[1]  We affirm.

### I. BACKGROUND

H.E. was born on November 6, 2008.  Appellee, the Department of Family and Protective Services (the "Department"), filed its original petition to terminate L.E.'s

---

[1] To protect the privacy of the parties, we refer to the mother and child by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2011); TEX. R. APP. P. 9.8(b)(2).

parental rights to H.E. on June 24, 2011. The petition alleged that "there was an order from North Carolina giving custody of [H.E.] to the State of North Carolina signed by a Judge date[d] June 17, 2011." The petition further alleged, among other things, that: L.E. tested positive for opiates and admitted using methamphetamine; L.E.'s boyfriend tested positive for amphetamines and "admitted to using methamphetamine[] for years"; L.E. attended only six out of eighteen drug treatment therapy sessions in North Carolina; L.E. refused drug screens on five occasions; L.E. allowed H.E.'s Medicaid coverage to lapse; and L.E "refused to disclose where she was living throughout the case and refused to sign any consent release forms." The petition explained that North Carolina case workers were concerned that L.E. was a flight risk because, prior to leaving that state, she had told her case worker "'see ya' and did not provide any information [as] to where she was going."

On August 26, 2011, a status hearing was held and the trial court rendered an order requiring L.E. to comply with a service plan prepared by the Department.[2]

At trial on December 17, 2012, Terri Kubena, a case worker for the Department, testified that, at the time she took over H.E.'s case in September 2011, L.E. was in the process of completing her service plan. However, at some point L.E. stopped following the plan. Kubena testified that, although L.E. completed her parenting class, she did not complete a required counseling program. Kubena stated that she did not know L.E.'s whereabouts and that she last had contact with L.E. in April of 2012, some eight months before trial, despite the fact that Kubena "called [L.E.] several times and left messages." Kubena testified that the Department believes it is in H.E.'s best interests

---

[2] The service plan, though incorporated by reference into the status hearing order, does not appear in the record before this Court.

for L.E.'s parental rights to be terminated on the bases of constructive abandonment and failure to complete her service plan.

L.E.'s attorney appeared at trial and stated on the record that she had not been able to contact L.E. for over six months. She then cross-examined Kubena, who agreed with counsel that L.E. "wasn't trying to make any efforts to see her daughter" because of "problems she was having." Kubena further agreed with counsel that "basically [L.E.] has chosen a life of using drugs versus taking care of her daughter."

On cross-examination by H.E.'s attorney ad litem, Kubena testified that L.E. started missing visits with H.E. in November 2011 and that this was "very upsetting" to H.E. Kubena and the attorney ad litem conferred and agreed to cancel the visits "because we didn't want [H.E.] crying and missing her mom if her mom wasn't going to show up." Kubena agreed with the attorney ad litem that L.E. failed to attend her scheduled December 2011 and January 2012 counseling sessions, "and so the therapy people decided to cancel her counseling." Kubena further agreed with the attorney ad litem's statement that H.E. is currently in a foster home "she's been in pretty much from the beginning and she's very comfortable there."[3] The attorney ad litem and Kubena each recommended to the trial court that L.E.'s rights be terminated.

The trial court granted the Department's petition to terminate L.E.'s parental rights. Specifically, the trial court found by clear and convincing evidence that: (1) L.E. knowingly placed or knowingly allowed H.E. to remain in conditions or surroundings which endanger H.E.'s physical or emotional well-being, *see* TEX. FAM. CODE ANN. §

---

[3] Kubena acknowledged that, at one point, L.E.'s father was "part of her support system." However, L.E.'s father had admitted to having alcohol problems in the past, and the last time Kubena spoke to L.E.'s father—on a phone call made by L.E. at 7:30 in the morning—he sounded intoxicated. Thus, Kubena agreed that the support of L.E.'s father "was not helping the situation."

161.001(1)(D) (West Supp. 2011); (2) L.E. engaged in conduct or knowingly placed H.E. with persons who engaged in conduct which endanger H.E.'s physical or emotional well-being, *see id.* § 161.001(1)(E); (3) L.E. constructively abandoned H.E., *see id.* § 161.001(1)(N); (4) L.E. failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of H.E., *see id.* § 161.001(1)(O); and (5) the termination of L.E.'s parental rights is in H.E.'s best interests. *See id.* § 161.001(2). This accelerated appeal followed. *See* TEX. R. APP. P. 28.4.

## II. DISCUSSION

By one issue on appeal, L.E. complains that "no evidence was introduced as to why [L.E.] failed to complete her service plan or attend her termination hearing." We construe this as a challenge to the legal sufficiency of the evidence supporting termination.

Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties and powers normally existing between them, except for the child's right to inherit from the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see In re D.S.P.*, 210 S.W.3d 776, 778 (Tex. App.—Corpus Christi 2006, no pet.). Termination must be supported by clear and convincing evidence. *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005); *In re D.S.P.*, 210 S.W.3d at 778. This intermediate standard falls between the preponderance of the evidence standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re C.S.*, 208 S.W.3d 77, 83 (Tex. App.—Fort Worth 2006, pet. denied). It is defined as the "measure or degree

4

of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008); *see In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

Before terminating parental rights, the trier of fact must find that the parent committed an act prohibited by subsection 161.001(1) of the Texas Family Code and that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 153.002 (West 2008); *id.* § 161.001; *see In re J.L.*, 163 S.W.3d at 84. In reviewing the legal sufficiency of the evidence supporting termination, we "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.L.*, 163 S.W.3d at 85. We must assume that the trier of fact resolved disputed facts in favor of its finding if it was reasonable to do so. *Id.* We must also consider undisputed evidence, if any, that does not support the finding. *Id.* at 86.

L.E. notes that the only witness to testify at the termination hearing, Kubena, stated that L.E. had showed up at some visitation sessions but had to leave after only a few minutes because she complained of feeling sick. Kubena speculated that L.E. felt sick because she had resumed engaging in drug abuse with her boyfriend. However, L.E. suggests that it is "just as likely" that she missed her visits and counseling appointments because she was "ill with a serious medical issue or disease." L.E. asks: "Is sickness always a sign of drug abuse, and nothing else? Is everyone who says she feels sick an illegal drug user?"[4]

---

[4] L.E. has not cited any authority establishing that a parent's failure to complete a service plan or attend a termination hearing may be excused if the parent suffers from an illness. In any event, no evidence was adduced indicating that L.E. was ill or suggesting any reason at all for her absences.

We need not answer these questions because the trial court's order of termination was based on more than just L.E.'s alleged illegal drug use. As noted, the court found that L.E. had violated four different provisions of family code subsection 161.001(1). One of those findings stated that L.E.:

constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months, and:

(i) the Department or authorized agency has made reasonable efforts to return the child to the mother;

(ii) the mother has not regularly visited or maintained significant contact with the child; and

(iii) the mother has demonstrated an inability to provide the child with a safe environment.

This finding tracks the language of part (N) of subsection 161.001(1), *see* TEX. FAM. CODE ANN. § 161.001(1)(N), and was supported by sufficient evidence. In particular, Kubena testified that the Department had prepared a service plan for L.E. which, if followed, could lead to reunification between L.E. and her daughter, but that L.E. failed to complete the plan. Kubena further testified that, based on L.E.'s behavior at her most recent visit with H.E., she believed L.E. was abusing drugs. Finally, Kubena stated that she called L.E. "several times and left messages" but that she had not heard from L.E. in eight months. L.E. did not advise the Department or the authorities in North Carolina of her whereabouts. And it is undisputed that L.E. did not "regularly visit[] or maintain[] significant contact with the child within the six months prior to trial." *Id.*

From this evidence, a reasonable trier of fact could have formed a firm belief or conviction that L.E. constructively abandoned H.E. and that the elements of part (N) of

6

subsection 161.001(1), as outlined above, had been satisfied. *See id.* The evidence was therefore sufficient to support this finding. *See In re J.L.*, 163 S.W.3d at 85.

Having concluded that the trial court's finding under part (N) of subsection 161.001(1) was supported by sufficient evidence, we need not determine whether the evidence was sufficient to support the court's findings under parts (D), (E), and (O) of that statute. *See* TEX. R. APP. P. 47.1; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest."). Moreover, L.E. does not challenge the sufficiency of the evidence supporting the trial court's finding that termination of L.E.'s parental rights was in H.E.'s best interests. We therefore do not address that issue. *See* TEX. R. APP. P. 47.1.

We overrule L.E.'s issue.

## III. CONCLUSION

The judgment of the trial court is affirmed.

DORI CONTRERAS GARZA,
Justice

Delivered and filed the
16th day of May, 2013.

7