

# NUMBER 13-13-00203-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

## IN THE INTEREST OF E. Y., A CHILD

---

**On appeal from the 135th District Court
of Victoria County, Texas.**

---

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant (E.Y.'s father), challenges the trial court's order terminating his parental

rights to his minor child, E.Y.[1]   By a single issue, appellant argues that the trial court

reversibly erred in terminating his parental rights because he lacked the necessary

---

[1] In appeals involving the termination of parental rights, the Texas Rules of Appellate Procedure require the use of an alias to refer to a minor.   TEX. R. APP. P. 9.8.   We may also use an alias "to [refer to] the minor's parent or other family member" to protect the minor's identity.   *Id.*   In this case, we will refer to the minor child as "E.Y.," the mother as "I.T.," and refer to the father as "appellant."

transportation that would have allowed him to visit his child, and thus he did not abandon his child.   We affirm.

## I.   BACKGROUND

E.Y. was born on June 29, 2009.   On September 20, 2011, the Department of Family and Protective Services ("the Department") filed an original petition for protection of a child, for conservatorship, and for termination.   Among other grounds for termination, the Department sought to terminate the mother's ("I.T.") parental rights because of drug use,[2] and appellant's rights because of constructive abandonment.   At the time of the filing, appellant was incarcerated in the Victoria County Jail for failure to pay child support for two children other than E.Y.   In December 2011, appellant was released from jail and began contact with the Department regarding his service plan and the visitation of his daughter, E.Y.

On September 4, 2012, a merits hearing was held at which the Department presented evidence in support of its petition for termination.   Terry Kubena, a caseworker with the Department, testified that after appellant's release from jail, appellant did "nothing" with regard to his service plan, except to visit E.Y. six to eight times between January and March 2012.   According to Kubena, appellant accompanied I.T. to visit E.Y. on those occasions.   Once I.T. stopped visiting E.Y., however, appellant also stopped visiting.

The record shows that, due to domestic problems between appellant and I.T., the couple separated.   I.T. moved to her mother's home in Alford, Texas.   After appellant

---

[2]   The affidavit filed in support of the Department's petition for termination showed that I.T. used cocaine and other drugs while E.Y. was in her care, and that she did not adequately supervise or feed E.Y.

and I.T. subsequently reconciled, appellant arranged to drive to Alford to pick up I.T. and her belongings, and to bring her back to Victoria, Texas. In March 2012, several weeks after appellant stopped visiting E.Y., E.Y. was moved to Alford to live with her maternal grandmother. E.Y. remained with I.T.'s mother in Alford for the remaining pendency of this case in the trial court.

Kubena testified that Alford is an hour-and-a-half drive from Victoria and that the Department would have "worked it out" for appellant if transportation problems made it difficult for him to visit E.Y. Appellant testified that Alford is a two-and-a-half- hour drive from Victoria, and that no one informed him that the visits were no longer "going to be in Victoria." Appellant testified that he learned from the maternal grandmother that E.Y. was moved. He admitted he had a prior conviction for possession of a controlled substance for which he was completing a ten-year probation sentence.

At the conclusion of the September 4, 2012, merits hearing, the trial court terminated I.T.'s parental rights, but gave appellant "one more chance" to comply with the service plan. Appellant received an extension of 180 days to begin and complete the Department's service plan, including counseling and other requirements.

On March 22, 2013, the trial court convened a second merits hearing, during which the Department again sought to terminate appellant's parental rights. The Department presented evidence that, while appellant had completed the counseling and parenting classes required under his service plan, he had not visited E.Y. between April 2012 and the March 2013 merits hearing. Kubena testified that appellant made no contact with her

to set up visitation with E.Y., nor did he ask that a visit be set up in Victoria to spare him any inconvenience in travelling to Alford.

The Department also presented evidence that on March 12, 2013, Victoria Police executed a search warrant of appellant's home in Victoria, which he shared with I.T. Police obtained the search warrant because appellant was observed selling drugs. During the raid of his home, appellant was caught flushing cocaine down the toilet as the police entered the home. Appellant was arrested and charged with tampering with physical evidence and with delivery of a controlled substance.

E.Y.'s maternal grandmother testified that E.Y. is doing well in her care and that E.Y. does not miss or ask for appellant. She testified that neither her address nor phone number changed while E.Y. was living with her. She also testified that, during a period of separation between I.T. and appellant, appellant sent her a photograph for I.T. The photograph showed appellant holding wads of money and the accompanying text message told I.T. this was what she was missing.

Initially, appellant was not present at the March 23, 2013 merits hearing because he changed telephone numbers and did not report the change to either the Department or to his legal counsel. Through the efforts of court staff, a telephone number was found on the bail-bond papers pertaining to his recent arrest, and his counsel was able to confer with him. Appellant was present for the conclusion of the merits hearing. Appellant testified that he could not visit E.Y. because he did not have transportation; he worked as a surveyor and drove a company truck, but was not allowed to use the truck for personal use. Appellant had worked as a surveyor since June 2012, earned twelve dollars per

4

hour, and had a "401(k)" account. On cross-examination, he admitted that he had not contacted Kubena at the Department to set up a visit with E.Y. since the September 2012 merits hearing.

A court appointed special advocate ("CASA") supervisor also testified at the March 2013 merits hearing. She testified that appellant and E.Y. have no relationship and that E.Y., who was three years old at the time of the hearing, would not even know appellant.

On March 25, 2013, the trial court rendered its order terminating appellant's parental rights to E.Y. on the ground of constructive abandonment under section 161.001(1)(N) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(1)(N) (West 2008). The trial court concluded that termination is in E.Y.'s best interest and found by clear and convincing evidence that appellant:

> constructively abandoned the child [E.Y.] who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months and: (1) the Department or authorized agency has made reasonable efforts to return the child to the father; (2) the father has not regularly visited or maintained significant contact with the child; and (3) the father has demonstrated an inability to provide the child with a safe environment.

. *See id.* This appeal followed.

## II. ISSUE PRESENTED

By his sole issue on appeal, appellant argues the trial court erred in terminating his parental rights because transportation problems prevented him from visiting E.Y. while E.Y. resided in another county. We construe this issue as a challenge to the legal and factual sufficiency of the evidence to support the trial court's finding that appellant "has not regularly visited or maintained significant contact with the child," E.Y. *See id.* §

5

161.001(1)(N)(ii); *see also* TEX. R. APP. P. 33.1(d) ("In a nonjury case, a complaint regarding the legal or factual insufficiency of the evidence . . . may be made for the first time on appeal in the complaining party's brief.").

## III.  STANDARD OF REVIEW

Involuntary termination of parental rights involves natural and constitutional rights and divests the parent and child of all legal rights, privileges, duties and powers normally existing between them, except for the child's right to inherit from the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see also In re D.S.P.*, 210 S.W.3d 776, 778 (Tex. App.—Corpus Christi 2006, no pet.). Termination must be supported by clear and convincing evidence. *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005); *In re D.S.P.*, 210 S.W.3d at 778. This intermediate standard falls between the preponderance of the evidence standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re C.S.*, 208 S.W.3d 77, 83 (Tex. App.—Fort Worth 2006, pet. denied). It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008); *see In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). Before terminating parental rights, the factfinder must find that the parent committed an act prohibited by subsection 161.001(1) of the Texas Family Code and that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 153.002 (West 2008); *id.* § 161.001; *see In re J.L.*, 163 S.W.3d at 84.

When the legal sufficiency of the evidence supporting the termination of parental rights is challenged, the reviewing court looks at all the evidence in the light most

favorable to the termination finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). The court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *J.O.A.*, 283 S.W.3d at 344; *J.F.C.*, 96 S.W.3d at 266. It should disregard all evidence that a reasonable factfinder could have disbelieved or found to be incredible. *J.O.A.*, 283 S.W.3d at 344; *J.F.C.*, 96 S.W.3d at 266. If, after conducting a legal sufficiency review of the record evidence, the court determines that no reasonable factfinder could have formed a firm belief or conviction that the matter to be proved was true, the court must conclude that the evidence on that matter is legally insufficient. *J.O.A.*, 283 S.W.3d at 344; *J.F.C.*, 96 S.W.3d at 266.

When the factual sufficiency of the evidence is challenged, the reviewing court reviews disputed or conflicting evidence. *J.O.A.*, 283 S.W.3d at 345; *J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient in a parental rights termination case if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction. *J.O.A.*, 283 S.W.3d at 345; *J.F.C.*, 96 S.W.3d at 266.

## IV.  ANALYSIS

One element of constructive abandonment under section 161.001(N) of the Family Code is the parent's failure to regularly visit or maintain significant contact with the child. *See* TEX. FAM. CODE ANN. § 161.001(N)(ii). In a published opinion, the Eighth Court of

Appeals recently considered an argument similar to appellant's argument that transportation problems prevented him from visiting E.Y., and thus he did not constructively abandon E.Y. under the visitation element of constructive abandonment. *See H.N. v. Department of Family and Protective Services*, No. 08-11-00364-CV, 2013 WL 968209, at *4–5 (Tex. App.—El Paso, March 13, 2013, no pet.). In the *H.N.* case, the father argued that he did not visit his minor child for nearly eighteen months because he could not afford to visit and did not have time to visit because he was busy complying with service-plan requirements. *Id.* at *4. The record showed the father was unemployed, but that he sometimes worked 'under the table' for a moving company. *Id.* n.4. The Department presented evidence that it had been willing to help the father arrange visits and that it had informed him that he could communicate with the child by phone or mail, but he did none of these things. *Id.* at *5. Under the applicable standards of review, the appellate court concluded the evidence was legally and factually sufficient to support the trial court's finding that the father did not regularly visit or maintain significant contact with the child. *Id.*; *see also In re J.J.O.*, 131 S.W.3d 618, 629 (Tex. App.—Fort Worth 2004, no pet.) (concluding legally and factually sufficient evidence supported finding mother failed to regularly visit or maintain significant contact with child when mother made only twelve visits to child during a nine-month period).

In this case, the record shows that appellant failed to visit E.Y. for over eleven months. Although he was gainfully employed and previously drove to Alford to pick up E.Y.'s mother, I.T., he neither visited E.Y. in Alford, nor sought the Department's assistance to establish visits in Victoria where appellant lived. At the merits hearing in

September 2012, the trial court told appellant that he was being given a final chance to comply with the service plan.   Kubena testified at that hearing that the Department would work with appellant to keep transportation problems from hindering appellant's ability to visit E.Y.   Nevertheless, appellant failed to visit E.Y. between the September 2012 merits hearing and the March 2013 merits hearing.   Further, appellant never asked the Department to set up visits in Victoria, even though he knew he could do so.   The CASA supervisor testified at the March 2013 hearing that appellant and E.Y. had no relationship and that E.Y. would not even know appellant.

The trial court was free to disbelieve appellant's testimony that transportation problems kept him from visiting and maintaining contact with E.Y.   We conclude the evidence was legally and factually sufficient to support the trial court's conclusion that appellant did not visit or maintain contact with E.Y.   *See H.N.*, 2013 WL 968209, at *5; *In re J.J.O.*, 131 S.W.3d at 629.   Appellant's sole issue on appeal is overruled.

## V.   CONCLUSION

We affirm the trial court's order terminating appellant's parental rights to E.Y.

GREGORY T. PERKES
Justice

Delivered and filed the
3rd day of July, 2013.